UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE DALE DEMENT,<br><br>    Petitioner,<br><br>    vs.<br><br>KEVIN CHAPPELL, Acting Warden of San Quentin State Prison,<br><br>    Respondent. | Case No. 1:12-CV-01525-AWI-P<br><br>Order Denying and Dismissing Petitioner's Pro Se Petition for Habeas Corpus Relief |

1.    BACKGROUND

    a.    Factual Background

    Petitioner Ronnie Dale Dement ("Dement") was convicted of oral copulation in a local detention facility and of the first degree murder of fellow inmate Greg Michael Andrews. The jury found true the special circumstance allegations of murder while engaged in the attempted commission of oral copulation and, in a separate proceeding, of a prior conviction of murder. *People v. Dement*, 53 Cal.4th 1, 6 (2011).

    b.    Procedural Background

    The judgment of death was entered against Dement on September 26, 1994. The State Public Defender was appointed as counsel for Dement's direct appeal

February 22, 1999.  (Case No. S042660.[1])  The record on appeal was finalized March 20, 2003.  Dement's direct appeal was fully briefed March 5, 2008, argued September 6, 2011, and his conviction and sentence were affirmed November 28, 2011.  *See People v. Dement*, 53 Cal.4th 1 (2011).  Dement's motion for rehearing was denied February 1, 2012.  The United States Supreme Court denied Dement's petition for certiorari October 1, 2012.  (Case No. 11-10917.)

To date, the state court has not appointed counsel to represent Dement for his petition for habeas corpus review.  The California Appellate Project (which has not been appointed as Dement's habeas corpus counsel) filed a placeholder or shell habeas petition on Dement's behalf June 27, 2012.  (Case No. S203626.) *See In Re Morgan*, 50 Cal.4th 932 (2010) (approving the filing of such petitions in order to toll the one-year federal statute of limitations in cases where the direct appeal is completed and counsel has yet to be appointed for habeas review).

c.   Petitioner's Filing with This Court[2]

On September 10, 2012, Dement filed a pro se document entitled Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241(a)(c)(3).  This filing is a photocopy, with some information inserted that is specific to Dement's circumstances, of petitions that have been filed by multiple other death row inmates in this and other federal courts in the State of California.

2.   DISCUSSION

Dement submits this petition under the statutory authority of 28 U.S.C. § 2241, but that statute merely confers power on the federal courts to grant petitions for writ of habeas corpus to state prisoners who demonstrate they are in

---

[1] The docket for cases before the California Supreme Court can be found at: http://appellatecases.courtinfo.ca.gov.

[2] Dement previously filed a similar pro se petition in the Central District of California. It was dismissed August 9, 2012.  *See* Case No. 2:12-CV-05681-MWF.

custody in violation of federal law.  Prisoners sentenced to death must proceed under the statutory requirements of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254, which provides the mechanism for hearing the habeas claims of condemned prisoners.

Under the AEDPA, a state prisoner can only bring a federal habeas petition if "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  There is a narrow exception to the exhaustion requirement for situations where there is an absence of available state corrective process or where circumstances exist that render such process ineffective to protect the rights of the prisoner.  28 U.S.C. § 2254(b)(1)(B)(I) and (ii).  Dement's complaint is designed in the form of a request to bypass the state habeas proceedings under subsection (b)(1)(B)(ii), but his actual complaint is that an ongoing due process violation is occurring because his state habeas corpus case has not been resolved in a timely manner.

Dement also apparently believes that California's State Court Policies violate the federal constitution.  Dement complains that the policies operate to suspend the writ of habeas corpus or other collateral challenges because the appointment of counsel for state habeas proceedings is not required until after the direct appeal, and that a habeas brief may not be filed for many years post-conviction and sentence.  Dement believes his opportunity to have his claims heard by the federal courts is being hampered by these policies.

The California Supreme Court Policies Regarding Cases Arising From Judgments of Death (hereafter "Policies" or "Policy") state that the "appointment of habeas corpus counsel for a person under a sentence of death shall be made simultaneously with appointment of appellate counsel, or at the earliest practicable time thereafter."  (Policy 3.2,2-1.)  Thus, the assertion that *by policy* the

California courts do not appoint habeas counsel until *after* the direct appeal has been adjudicated is not true. Even though the facts of Dement's case appear inconsistent with the policy, since he has not yet been appointed habeas counsel, the policies include a provision for different timelines where the appointment of habeas counsel is delayed. This provision provides that a state habeas petition filed within 36 months after the appointment of habeas counsel is presumed timely. (Policy 3.1,1-1.1.)

Dement claims that lengthy appellate delays are also prejudicial to his receiving the full benefits of due process. These claims are essentially identical to recent pro se claims made in this District and others, that California's procedures either amounted to a suspension of the writ or made the filing of state appellate or post-conviction petitions an exercise in futility. *See e.g., Duff v. Warden*, 2:12-CV-01258 LKK KJN (E.D.Cal.); *Wilson v. Chappell*, 2:12-CV-05427 SJO (C.D.Cal.).

    a.    Petitioner Cannot Prevail on His Appellate Delay Claim

There is no controlling law in this Circuit which supports the notion that lengthy appellate delay can excuse the exhaustion requirement for pending or yet to be filed habeas claims. Though decided in terms of an actual habeas claim, and not in an effort to bypass the exhaustion requirement, the recent Ninth Circuit decision in *Hayes v. Ayers*, 632 F.3d 500 (9th Cir. 2011), is instructive to Dement's assertions. Hayes had been on California's death row for eleven years before his opening brief on direct appeal was filed. *Id.* at 523. Hayes brought a federal habeas claim alleging due process violation of his purported right to a speedy appeal. *Id.* Though he cited case law, including law from the Ninth Circuit, suggesting such a claim could be viable, the Court of Appeals ultimately determined that such a claim could not be brought because there was no United State Supreme Court precedent finding that such a right existed. *Id.* In addition,

the Court of Appeals found that Hayes had identified no prejudice which resulted from the delay. *Id.*

The Court of Appeals reaffirmed this holding in *Blair v. Martel*, 645 F.3d 1151 (9th Cir. 2011), when it found that it could not consider Blair's habeas claim that his due process rights had been violated by an appellate delay of thirteen years. *Id.* at 1158. The Court reiterated that the federal courts cannot compel the state courts to process an appeal except perhaps through consideration of a claim under 42 U.S.C. § 1983. *Id.* at 1157-58. These findings are consistent with the United States Supreme Court's holding that the AEDPA operates as a limit on the federal courts' ability to disturb state criminal court judgments. The goal of the AEDPA is to promote comity, finality, and federalism by giving the state courts the first opportunity to review claims and correct any constitutional infirmities in the first instance. *Cullen v. Pinholster*, 131 S. Ct. 1398, 1401 (2011).

Dement also may be implying that he has fallen victim to a de facto suspension of the writ. Even if he could establish an undue delay by the California courts in processing his habeas petition, federal law still binds this Court's consideration of any suspension allegations. There is very little agreement over the scope and meaning of the Suspension Clause, but the Supreme Court observed that most legislative changes to habeas corpus have acted not to contract the writ's protection but to expand it or to hasten resolution of petitioner's claims. *Boumediene v. Bush*, 553 U.S. 723, 773 (2008).

The same is true in California where the state Supreme Court has extended the presumptive periods for filing a timely petition: in cases of appointment of the same counsel for both direct appeal and habeas by doubling the time limits from 90 to 180 days, and in cases of separate appointments by increasing the time for filing from 24 to 36 months. (Policies, Official Notes Nos. 1 & 2.) California's

policies also mandate the appointment of habeas counsel in all capital cases in an effort to ensure that potentially meritorious habeas petitions are presented in a timely fashion. (Policy 3.) These policies demonstrate that the state Supreme Court is cognizant of the time constraints on counsel, the complexity of habeas cases, and the sometimes arcane nature of habeas law, and is also fully aware that its policies impose no strict limits on the number of times a habeas petitioner can return to the state courts with new theories of relief, but only requires a showing that there was no substantial delay, or if there was substantial delay, good cause for the delay. (Policy 3.1,1-1 and 1-2.)

The fact that California's Policies track the high Court's observations in *Boumediene* is good reason to decline to find a de facto suspension of the writ in Dement's claim of appellate delay. Other authorities suggest that the Suspension Clause does not apply to the states. *Gasquet v. LaPeyre*, 242 U.S. 367 (1917) (holding the Suspension Clause is not a limitation on State action); *Geach v. Olsen*, 211 F.2d 682, 684 (7th Cir. 1954) (same); *Harvey v. State of South Carolina*, 310 F. Supp. 83, 85 (D.S.C. 1970) (same). Thus, any obligations arising out of the Suspension Clause fall on Congress and the federal courts, not on the court of the State of California. Thus, Dement's claim that the state court policies amount to a suspension of the writ cannot be sustained.

Suspension of the writ is not the only method Dement might employ in seeking to bypass the exhaustion requirement. The Supreme Court has also held that a petitioner may be excused from exhausting state remedies if a return to the state court would be futile. For example, when the petitioner's claim is identical to a claim presented to and rejected by the state's highest court, failure to exhaust that claim may be excused as futile. *See Lynce v. Mathis*, 519 U.S. 433, 436, n.4 (1997) (excusing petitioner from presenting his Ex Post Facto Clause claim to the

highest state court where that court had rejected the identical issue in another case).  "[I]f the highest state court has recently addressed the issue raised in the petition and resolved it adversely to petitioner, in the absence of any intervening United States Supreme Court decisions on point or any other indication that the state court intends to depart from its prior decisions," exhaustion may be futile. *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981).  The exact contours of this exception are not entirely clear, but both the United State Supreme Court and the Court of Appeals have narrowly applied this exception.  *See, e.g., Engle v. Isaac*, 456 U.S. 107, 130 (1982) ("Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid."); *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993) (affirming that apparent futility of presenting claims to state court does not constitution cause for procedural default).

       The futility doctrine is most appropriately applied when the issue involves pure law rather than an issue of fact or a mixed question of law and fact. *Compare Lynce v. Mathis*, 519 U.S. at 436, n.4 (recognizing futility doctrine excused exhaustion of pure legal issue regarding statutory challenge based on ex post facto violation), *with Noltie v. Peterson*, 9 F. 3d at 405 (holding futility doctrine did not excuse petitioner from failing to raise juror claim in state court even though petitioner had exhausted a claim regarding another juror because facts of both claims were different).  The futility doctrine also may excuse exhaustion if the factual or legal basis of the claim was not reasonably available at the time the petitioner pursued his state remedies.  *See LaGrand v. Stewart*, 173 F.3d 1144, 1148 (9th Cir. 1999) (excusing procedural default based on futility).

       None of these scenarios exist in this case.  Dement's sole basis for filing this petition is that he believes the California Supreme Court is taking too long to

1 appoint habeas counsel and decide his case. Dement has an available state court
2 remedy and he is in the process of pursuing it. There is no legal or factual
3 support for the filing of this habeas petition. Any delays Dement is experiencing
4 are not distinct from those experienced by other similarly situated petitioners.
5 *See In Re Morgan, supra*, 50 Cal.4th 932.[3] This petition is premature and must be
6 dismissed.

      b.    Petitioner's Conflict Claim is Illusory

Dement's pleading also addresses an alleged conflict of interest with his appointed attorneys, but his complaint dois not assert a lack of communication or mishandling of the merits of his substantive claims. Rather he bases his conflict claim on the fact that his appointed attorney feels bound by the policies, procedures, rules, and rulings of the California Supreme Court, and further has not asserted claims challenging the California Supreme Court system.

This is not a bona fide conflict of interest. Rather, it is an attempt to present substantive claims to this Court which Dement's attorney has not raised. Moreover, there is nothing the least bit ineffectual about an attorney's declination to raise challenges to the California State Court system. Even if this Court believed the California State Court system and its policies were flawed, it is without the authority to provide a remedy. The claims that Dement wishes to pursue are not cognizable on federal habeas corpus. For all these reasons, his attorney conflict claim must be rejected.

---

[3] A review of the 33 capital convictions pending before the California Supreme Court from the Fresno Division of the Eastern District of California shows that only four have not yet had counsel appointed for their direct appeal, but that 17 (including Dement) are still waiting for appointment of habeas counsel. Although Dement's conviction is the oldest still waiting for habeas counsel, eight others also have been waiting for more than ten years.

   c. The Requirements for a Certificate of Appealability Are Not Met

  The issuance of certificates of appealability in habeas cases is controlled by 28 U.S.C. § 2253.  The statute provides that unless a judge issues a certificate of appealability, a prisoner under a state sentence may not appeal the final order in a habeas corpus proceeding by.  28 U.S.C. § 2253(c)(1)(A).  Further, the statute states that a certificate of appealability may issue only if there is a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2254(c)(2).  Although Dement complains that his due process rights are being violated by the slowness of the state court proceedings, no such claim is cognizable under the AEDPA.  Federal habeas corpus proceedings exist to determine the constitutional viability of the trial proceedings that led to Dement's conviction and sentence, not to determine the fairness of state habeas proceedings.  Further, the United States Supreme Court has never held that a due process violation occurs when a state court delays its decision on a direct appeal or habeas petition.  For these reasons, the Court will not issue a certificate of appealability in this case.

3. CONCLUSION

  For the forgoing reasons, the Petition for Writ of Habeas Corpus is DENIED and DISMISSED.  In addition, the Court declines to issue  a certificate of appealability as the requirements for issuance have not been met.


IT IS SO ORDERED.


DATED: __October 18, 2012__

           __/s/ Anthony W. Ishii__
           Chief United States District Judge